UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SHANE MICHAEL WEST, #459300, )
)
    Plaintiff, )
)
v. ) No.: 4:16-CV-07-HSM-SKL
)
WARREN COUNTY SHERIFF DEP'T and )
JACKIE MATHENY, Sheriff, )
)
    Defendants. )

## **MEMORANDUM OPINION**

Acting pro se, Shane Michael West, a prisoner in the Warren County jail in McMinnville, Tennessee, brings this civil rights complaint under 42 U.S.C. § 1983, presenting, as grounds for relief, allegations that he has been subjected to wrongful housing conditions and treatment at the jail [Doc. 1].[1] Plaintiff has named as Defendants the "Warren County Sheriff Department" and Warren County Sheriff Jackie Matheny.

I.    **PLAINTIFF'S ALLEGATIONS**

Plaintiff's first claim is that, on November 12, 2015, he applied for a slot in a computer repair class, but was informed that he could not be admitted to the class since he had not yet been sentenced in his state criminal case. The next day, Plaintiff learned that two African-American inmates, who were in the same yet-to-be-sentenced predicament as was Plaintiff, were selected for the class. Indeed, one of those inmates was sentenced on November 17, 2015—the same day Plaintiff was sentenced. Thus, on that very day, Plaintiff became eligible for admission to the

---

[1] This action, filed originally in the Middle District, was transferred to this Court based on venue, after the filing fee was assessed [Doc. 3].

class. The other African-American inmate who was chosen as a class participant was sentenced and transferred to another prison, which opened up the position in the class which Plaintiff had sought to fill.

On November 3rd and 4th of 2015, Plaintiff wrote letters respectively to the Executive Director and the Administrator of the computer repair program, explaining what had happened in connection with his application to attend the class, but he received no response to those letters. Plaintiff faults Defendant Sheriff Jackie Matheny for the rejection of Plaintiff's application for enrollment in the class based on Plaintiff's not-yet-sentenced status, while two African-American inmates who were in the same not-yet-sentenced category as Plaintiff were admitted to the program.

Plaintiff's second claim is bottomed on allegations regarding his housing conditions, which include: (1) black mold in the shower, which is deadly to people; (2) 1-inch thick dust standing on the ventilation system; (3) an air-conditioning system at the jail which stays on and results in freezing temperatures in the jail and which, in turn, causes inmates to become ill; (4) a single, unsanitary, improperly-cleaned toilet which is used by more than ten inmates;[2] (5) a lack of sanitation of beds;[3] (6) an intercom system limited to use by the correctional officers and not by inmates who, if permitted to use it, could alert officers to safety threats; (7) a lack of opportunity for one-hour, daily, outdoor exercise in the natural sunlight; (8) a 2-inch steel apparatus welded over windows in the jail cells; and (9) no access to current events or a clock to tell the time of day.

---

[2] Plaintiff maintains that the toilet should be cleaned daily since HIV, staphylococcus, and hepatitis infections are "going around" [Doc. 1 at 5].

[3] Plaintiff contends that he is housed with County inmates who possibly have body lice—a situation which calls for the sanitizing of those beds [*Id.*].

2

Also, according to Plaintiff, inmates who get sick are denied medication to treat their symptoms; charged $2-$3 per pill; or denied permission to obtain over-the-counter medications. Finally, Plaintiff contends that, when he sought medical care for a possible STD [sexually-transmitted disease], he was told to deal with it until he gets to prison since the jail does not provide treatment for such conditions.

Plaintiff asks for relief in the form of an opportunity to take the computer repair course; a transfer to a state prison; one-hour of daily usage of the jail law library; reimbursement of all court costs and fees associated with this lawsuit; and, perhaps, monetary damages, though he is unable to place a "monetary value" on "a missed chance" to attend a class that "could of [sic] helped fix" his life [Doc. 1 at 7].

## II. SCREENING & LEGAL STANDARDS

The Court must now review the complaint to determine whether it states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If so, this suit must be dismissed. In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The "facial plausibility" standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

3

me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A plaintiff cannot rely on "legal conclusions couched as factual allegations" or "[t]hreadbare recitals of the elements of a cause of action," but must plead more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). *See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines the claims under these guidelines.

### III. LAW & ANALYSIS

The first Defendant named in the complaint is the Warren County Sheriff's Department. Unfortunately for Plaintiff, he fails to state a § 1983 claim against the Warren County Sheriff's Department because this Defendant is a municipal department of Warren County, is not a municipality, and, thus, is not a "person" subject to suit within the terms of the statute. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689-90 n.53 (1978) (finding that only "bodies politic" are "persons" who can be sued under 42 U.S.C. § 1983.) Indeed, courts in this district previously have held that a local Sheriff's Department is not an entity subject to suit under § 1983. *Smith v. Ritter*, No. 1:12-CV-417, 2013 WL 3753984, at *4 (E.D. Tenn. July 15,

4

2013) (holding that "the Hamilton County Sheriff's Department is not a suable entity for § 1983 purposes"); *Bradford v. Gardner*, 578 F.Supp. 382, 383 (E.D. Tenn. 1984) (citing *Williams v. Baxter*, 536 F.Supp. 13 (E.D. Tenn. 1981)); *see also Petty v. County of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Brinkley v. Loftis*, No. 3:11–CV–1158, 2012 WL 2370106, at *3 (M.D. Tenn. June 22, 2012).

Thus, because the Warren County Sheriff's Department is not an entity that can be sued under § 1983, Plaintiff fails to state a claim against this Defendant.

Though the same is not true with respect to the remaining Defendant, Sheriff Jackie Matheny, the pleading contains no allegations showing how he violated any of Plaintiff's rights or connecting Sheriff Matheny to the purported illegal living conditions or the denial of admission to the computer repair class. It may be that Plaintiff believes that the Sheriff is responsible for ensuring that the Warren County jail is operating within constitutional bounds and, hence, that the Sheriff has a duty to make certain that his subordinates are not infringing upon the rights of inmates housed in the jail. If Plaintiff's theory of recovery is based upon this reasoning, he fails to state an actionable § 1983 claim against Defendant Matheny.

The law is settled that § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). While respondeat superior does not provide a valid basis of liability, *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 691; *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold this Defendant liable so long as he can demonstrate that the Sheriff implicitly authorized, approved, or knowingly acquiesced in any alleged wrongdoing of a subordinate. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989).

5

An "affirmative link" must exist between the subordinate's misconduct and the Sheriff's authorization or approval of the claimed wrongdoing. *Rizzo*, 423 U.S. at 371. Supervisors, however, cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

As Plaintiff does not allege that this Defendant authorized any unconstitutional conduct on the part of a subordinate, there is no linkage between the Sheriff and any alleged wrongdoing and, thus, there is nothing from which to conclude that Sheriff Matheny condoned any such unlawful behavior.

Accordingly, given that Plaintiff has made no factual allegations whatsoever against Sheriff Matheny, he fails to state a claim against this Defendant. *See Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996) (instructing courts not to suppose that a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged).

Even if Plaintiff had named proper defendants, his first claim involving admission into the computer repair class could not advance since he has not alleged the deprivation of a constitutional right. A prisoner has no constitutional entitlement to be provided with or to participate in educational or vocational programs while incarcerated. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (inmates have no right to educational or vocational programs in prison).

Additionally, the various allegations which comprise the second claim are of a general nature and, seemingly, have been asserted on behalf of all inmates in the Warren County jail. For the most part, Plaintiff has not indicated how these alleged deprivations or untoward conditions have caused him personal injury. This failure implicates the standing doctrine, which

6

derives from Article III's restriction of federal court jurisdiction to "cases and controversies." U.S. CONST. art. III, § 2, cl.1.

A plaintiff establishes standing, if he demonstrates three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted). Here, there is no injury in fact.

Absent a plea of personal harm, Plaintiff has failed to satisfy the first element. Therefore, Plaintiff has not shown that he has standing to pursue the claims which allege harm to the general population of inmates at the Warren County jail. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court"). Typically, a prisoner has standing to assert his own Eighth Amendment rights, but not those of other inmates. *Whitmore*, 495 U.S. at 161.

There is one sub-issue in the second claim which calls for more discussion—Plaintiff's assertion that he was denied medical care for a possible STD.

The Eighth Amendment forbids punishments that involve the unnecessary and wanton infliction of pain. Deliberate indifference to an inmate's serious medical needs constitutes an unnecessary and wanton infliction of pain and, therefore, a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious medical need" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). Officers are deliberately indifferent where they are aware of facts from which they could infer

that a prisoner faces a significant risk of serious harm (such as a serious medical need) and where they actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff has failed to show either a serious medical need or a state of mind of deliberate indifference.

First, a prisoner's report of self-diagnosis is insufficient to show a serious medical need. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (holding that prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from kidney stones and the available medical evidence does not support his self-diagnosis"); *Braziel v. Wilson*, No. 1:11-CV-119, 2011 WL 6026508, at *3 (E.D. Tenn. Dec. 5, 2011) (finding that a prisoner's self-diagnosis of a broken jaw fails to show a serious medical need); *cf. Dixon v. Nusholtz*, No. 98-1637, 1999 WL 507031, at *2 (6th Cir. June 10, 1999) (noting that a difference of opinion between a physician's diagnosis and prisoner's self-diagnosis "falls short of the Eighth Amendment's requirements for suit"). And importantly, Plaintiff has not described any troublesome symptoms from which he suffered as a result of the possible STD and for which he needed medical care.

Further, Plaintiff does not indicate the identity of the individual who denied him medical treatment nor set forth the date he was denied such treatment. *Blackmore,* 390 F.3d at 896 ("Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."). The Court cannot draw an inference about the state of mind of a defendant who has not been identified.

## IV. CONCLUSION

In light of the above law and analysis, this case will be **DISMISSED** sua sponte for failure to state a claim for relief.

Finally, the Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a) and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal from this decision, he must also submit either: (a) the $505.00 appellate filing fee or (b) a motion for leave to appeal *in forma pauperis*, his financial affidavit, and a certified copy of his inmate trust fund showing the transactions in the account for the last six months. 28 U.S.C. § 1914(a)(2).

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE